Good morning, Your Honors. Richard Antonini on behalf of the appellant. Let me raise this up. I was an insurance lawyer for 30 years, so that last case fascinated me. But a long time ago, I took civil procedure in law school, and one of the first subjects we covered was, of course, diversity and jurisdiction. And that's what this case is. Before I get on to that, I'd like to reserve at least two minutes for rebuttal. We'll try to help you keep your eye on that time. I will do that. There are three points I'd like to make. First, one is a matter of statutory construction. The diversity statutes set out the limits of diversity jurisdiction, and they generally talk about the citizenship of individuals, of human beings, and not non-human organizations. The only time they talk about the citizenship of a non-individual is, of course, corporations. Corporations are considered citizens of a state where they're incorporated, and by statute, where they have their principal place of business. The diversity statutes do not talk about real estate investment trusts, securitized trusts, or trusts in general. So to read into the diversity statutes essentially the same thing as it allowed for corporations, that a trust is considered the citizen of a state where its trustee is a citizen, I think, is to read into diversity statutes something that isn't there, that Congress has not created. Counsel, with respect, we're bound by the Supreme Court. Yes. And the Supreme Court, of course, has spoken to this issue in Navarro, in Americal. There are just all kinds of cases that address the issues that you're talking about. Right. And this particular case, we actually have a case of our own, Johnson, which clearly held that a trust has the citizenship of the trustee. That's who got sued in this case, right? The trust and the trustee got sued. Okay, so what's the problem? The problem is that, first of all, the case you're talking about, Johnson, I think has been undercut by Americal. Okay, and is there any case that says that? Not in the Ninth Circuit. I think this Court has not dealt with this issue in a published opinion as yet. Okay, so basically we have this case that says one thing. Do you agree that if we, you're familiar with our case, Miller v. Gammie, that permits us to override or distinguish one of our cases if it's been, if the logic or ruling of a Supreme Court case or of a non-bond case undercuts it? But in this case, we have no such case like that. So unless we conclude that Johnson has been overridden by either the logic or the ruling of a Supreme Court ruling, we don't have any choice but to find that the proper party was served in this case, do we? Well, you have to conclude that Johnson was implicitly overridden by Americal. Then that controls, right? Yes. Okay. What's your best argument that Navarro or Americal or anything else the Supreme Court has said has effectively overruled Johnson? I think Americal itself. I mean, the parallels are, you know, the parallels are very close. We're dealing with, in both cases, a trust, a trust form for business purposes, and a trust that has basically a profit motive. And the Supreme Court has said in Americal that in a situation like that, that the, it's not the citizenship of the trustee, it's the citizenship of its individual members. And also I think that the thrust of Americal is, is that there's a presumption when you're dealing with an unincorporated business entity of some sort, that it's the citizenship of its individual members determines diversity. Are you saying that Americal overruled Navarro? I think Americal distinguished Navarro, and that's, that's, that's why circuit courts are sort of all over the place on this issue. They're trying to reconcile Americal with Navarro. You know, Navarro says that when a trustee sues individually as a plaintiff, then the trustee's citizenship controls diversity. And the Supreme Court, you know, limited Navarro and Americal to just that fact. When a trustee sues individually, when a trust, the individual person that's a trustee sues, you know, then that person's citizenship determines diversity. But if it's a, if it's a, if a trust itself is, if a trust itself is an investment trust that's then sued, the presumption normally is, is that the citizenship of its individual members controls diversity. Navarro, the general rule, that is the general rule, that the individual members of a business organization or individual investors determine diversity. Navarro is an exception to that general rule and is a sort of carved in exception to the diversity statutes. In your opinion, what kind of trust is involved in this case? This is a securitized investment trust. It's basically an investment vehicle. It is regulated by the SEC. It files registration documents and including underwriting documents, securities offerings and other such documents with the SEC under the securities registration laws of 1933 and 1934. It seeks investors in the general public. It is clearly, it's clearly a business investment entity. But isn't, with respect, help me with this, isn't this, you're talking about the nature of the assets that the trust purchases, not who owns it, right? Right. Okay. So the fact that the trust may have all these securities is not really the issue that was addressed by AmeriCorps, was it? It had to do with members and that's not a membership issue, is it? Well, the trust itself is controlled, at least in theory, by its members, by its investors. Its day-to-day operations may or may not be run by a trustee. That is actually an issue of fact. In these cases, when you're dealing with a securitized investment trust that basically has holes and mortgages, most of the trust operations are actually conducted by loan servicers, either a master servicer or a subservicer, and the trustee does very little. I didn't read the debenture in this thing. Right. It wasn't in the record. But normally those kinds of investments are, basically you've got the trustee, which is often in this case like a bank, that basically handles these things, does really little with them, just services them. They're not members. They're just assets that somebody parks with them to service them. That's what I thought this is. Am I wrong about that? It's a little unclear exactly who does what. We don't know what the trustee does in a case like this. Somebody has to do something. Most of it is actually delegated to a master loan servicer, and then the master loan servicer delegates it to subservicers, and the trustee, as you say, does very little. But the trustee is in charge. The trustee sets this thing up, right? And it says to the people who have all these loans, hey, look, why don't you let us service your loans for you, and we'll charge you a little fee. They say, great, here's this package, and here's another package. But they run it. They may have subagents that help service it. But in this case, I'm struggling with the idea that HSBC Bank isn't it. It's the trustee. It runs it. There aren't any members. They're just people who have investments in it, have certain securitized rights. But where are the members? I don't get that. Well, Your Honor, let me make several points about that. First, if you're talking about who runs the trust, who controls the operations of the trust, the Cardin case was very similar in some ways in the sense that it was a limited partnership run by a general partner. And in that case, it was clear that the general partner ran the affairs of the limited partnership, and yet the Supreme Court said that was irrelevant. It was the membership, it was the citizenship of the individual partners, the individual limited partners that determined diversity. Well, true, but in that case, a limited partnership clearly has limited partners, i.e., members. What I'm suggesting here is at least my understanding as a former security lawyer, is that the way these things work is you've got the bank. The bank will offer to service these things. There aren't any members. There are investors in the securities. You know, like you've got, you may have a pension fund or whatever else, and they all have interest in, not in the trust, but in the securities themselves, and they are being serviced. Is that wrong? We don't know. We don't know. Say I'm right. Say I'm right. Arguendo. I'm right. There are no members to this. The trust is set up for the sole purpose of servicing maybe thousands and thousands of mortgages or loans. And it just does that. It may contract to other people to perform the actual service, but there aren't any members. They're just people who, they own these things. They're being serviced by them. It's really no different than you have somebody come in and service your water heater in your law office. It's a little more sophisticated. But the bottom line is somebody's coming in and performing a service. In this case, they're performing a service of servicing the loans that have been made by other people. There aren't any members. That undoubtedly was also true at Americold. And it's also probably true in most of the cases cited in the briefs. But even in Americold, the court said it's the individual members, the individual investors, as it were, who. But there's a difference between members and investors. Well, we don't know here. We don't know. Whose burden is it to show what we've got here? It is their burden since they removed. And I might add, none of this was alleged in the removal petition. The removal petition only relied on the citizenship of HSBC. None of this was alleged, even though this case was removed four months after Americold came down. So if the court wants to take that tact that somehow, you know, what the trustee does and how much power the trustee has and whether there are members or shareholders, certificate holders or something else, then it should remand the case for factual findings on exactly that issue. As I say, none of this is alleged in the removal petition. As they point out in their brief, they are bound, you know, parties are bound by their pleadings. And so they are bound by what they say in their removal petition, you know, not second thoughts they're coming up with here. Do you want to save any of your time? Yes, I'll save the rest. Well, actually, let me make one more point. There's a discussion in the briefs, in their brief about federal question jurisdiction. There was never a federal claim alleged here. Only California common law or statutory claims. But that's right. Even if they have jurisdiction, they lose anyway because there's no federal jurisdiction, right? Right. And I'll reserve the rest of my time. Okay. Very well. May it please the Court. Emily Edling is here for the response in this matter. The case before your honors is the latest in a revolving door of litigation by Ms. Demarest to stop foreclosure in a loan that's been in default for more than 10 years, almost 12 this year. After initiating several other suits that have been dismissed, she initiated the instant suit. Tell me, what's the nature of this loan? Commercial, residential, what is it? Residential loan. And all this has been going on with respect to a residential loan? Yes. How much is it at stake? Probably a couple hundred thousand at this point. Okay. All right. Give me some idea. I'm not sure. Off the top. So after initiating several other suits, the instant suit was brought. Summary judgment proceedings were brought. Ms. Demarest got new counsel at that point, even though some discovery had already been conducted, and asked for more time to conduct more discovery, still submitted an opposition that didn't raise any viable legal claim and also didn't present any evidence disputing raising a material issue of fact. So summary judgment was granted in this case. And now there's a new issue that's been raised on appeal as to whether there was original jurisdiction. As we mentioned in our briefing, because there's already been a disposition on the merits of the case, all procedural defects in jurisdiction has been waived. So when counsel mentions what was stated in our notice of removal and that we didn't stay X, Y, and Z, that no longer matters. The only issue before the court is whether or not there was original jurisdiction and whether or not the court could have asserted original jurisdiction had all these matters been raised before the district court, as would have been much more economical for all of the parties. Our brief outlines three different tests that the court across the countries have employed to determine whether citizenship of the trustee controls for the jurisdiction analysis. We do think Johnson is still good law, but we recognize that there have been three Supreme Court cases that are important to the analysis of whether Johnson is still good law. But we don't think any of these cases have overruled Johnson in any way. If you were to write this case to describe how Johnson fits into Navarro and Americal and so on, what would you say, what would be the test that should survive, if you will, in light of the Supreme Court's instructions? I think under Navarro, the Supreme Court's instructions are really clear, that if the trustee is the party that sued, then the trustee's citizenship controls. That's what happened in this case, right? Yes. And counsel mentioned that both the trust and the trustee had been sued. That's not correct. It was HSBC Bank N.A. that was sued in the original complaint. And then when the notice of removal was filed, the counsel preparing the notice of removal responded on behalf of HSBC as trustee and then identified the name of the trust and said, you know, incorrectly named as HSBC Bank N.A. Is that now a party pursuant to your perspective? In other words, is the trust currently a party in light of the response? No, because the response was HSBC Bank as trustee. Okay, but did you name the trust? I thought you said that you then. Yeah, as trustee for the designated trust. Oh, I see. Okay, we're just further defining the trustee. Exactly, so that it was really clear who the specific party was and that we're not just suing the bank, we're suing the bank as trustee of this trust. So that is the actual party. Under Johnson and Navarro, it's clear then that the trustee controls. Now, I think something that's been discussed in the briefing a little bit and suggested by counsel is, you know, Navarro does have a little bit of a qualitative analysis that it goes into as to whether or not the trustee is the real party in interest. And I think that that real party in interest analysis is very easy as determined by Navarro. They simply look at the trust agreement and they say, under the trust agreement that was submitted in the case, this trustee has the power to hold, dispose of, manage the property in the trust, and also to litigate. So there's been a lot of concerns raised about, you know, what's in the record and whether we need more discovery, but in Navarro it was really clear that the only reason we would even go down the path of looking at who has been sued is to determine whether it's a sham party that's been sued or whether it's the real party in interest. And that's addressed in Navarro. It's a real party in interest if they have the power. Counsel, since the trust was submitted, can you answer the question that I asked your opponent? This is a securitized trust. Is this a situation where the owners of the, we'll call them trustees, maybe there are hundreds, maybe there are thousands, maybe, I don't know, hundreds of thousands, but however many there are, are those folks considered members or are there some people who have, if you will, the trust is conducting a servicing operation? Is that a fair statement? I'm afraid to opine on something that hasn't been briefed and researched, but I consider, you know, they're called certificate holders under the trust. And what kind of rights do certificate holders have? Well, the PSA discusses that but mentions that it's very limited rights. You know, there are some rights to receive shares of money, I believe. That come from the payment from the trustees. Which the trustee manages in its management of the trust funds. And how many of them, how many certificate holders are there approximately? I don't know, Your Honor. I'm sorry. Maybe hundreds of thousands? You don't know? Yeah, I'm hesitant to make a guess. But. Is the argument that one of these certificate owners would be, would defeat diversity because they would presumably live in California? I mean, is that? That's opposing counsel's argument. But we don't know that as a fact. We don't know that as a fact. We assume that. I would not assume that. Oh, you don't assume it. But the appellant assumes that. Right. But, you know, we contend. The appellant further states, though, that it's the burden, in this case of the bank, to prove that diversity was appropriate. So is it your burden to show the nature of the certificate holders and whether or not their nature impacts on any of the teaching, instruction, that the Supreme Court has given us in the various cases we've talked about? Right. Well, here's the thing, Your Honor. I realize that he can raise this for the first time on appeal. But I don't know of any authority that says the party can ask at the appellate stage to reopen discovery for a third round to get at this issue. And we would contend that we have satisfied that burden. Isn't it clear that at any time jurisdiction can be raised and it can be fatal to a claim no matter what its stage? Isn't that right? Yes. But to ask for more discovery, the court has discretion to limit that. And here the party already reopened discovery past the summary judgment proceeding, asking for more time. The fact that they forgot to ask questions that they wanted to ask to get at jurisdiction isn't our fault, and I don't think the court needs to reopen discovery for it. And moreover, the PSA, the pooling and servicing agreement that governs the trust, was submitted as part of the summary judgment proceeding. So we don't contend that you need to look at that or that you need to go there because we have other tests to use. But everything that the court needs to consider jurisdiction is already in the record. Let's shift gears a little bit and talk about the last thing that your opponent mentioned, which is that there aren't any real federal legal issues here. Did the district court have federal subject matter jurisdiction? Well, we mentioned this in our opposition, or our answering brief, and there was no discussion about it in our reply. But there were two different references in the complaint to federal law. But they were really just kind of fly-by tangential references, were they not? Aren't the causes of action, aren't they sounding almost entirely in state law? Yes, I'd agree with that. However, my point in raising the argument is that if the plaintiff had itself brought this complaint in the district court, it would have been entitled to do so because it mentioned. Again, we're talking jurisdiction. But that's the test for original jurisdiction, is whether or not this court could have asserted original jurisdiction. So if the plaintiff could have brought the case. You're talking about original subject matter jurisdiction? Yes. Okay. So if the plaintiff could have brought the case here, which we contend they could because they mentioned federal law, then this court has original jurisdiction. That's kind of a stretch, isn't it? I'm sorry, what? That's kind of a stretch, isn't it? Well, we cited some cases that discuss cases that were a stretch. The plaintiff brought the case in district court, asserted TILA in the cover sheet of the complaint was one of them, and the court found that that's enough, that the plaintiff's allegations were entitled to the benefit of the doubt and they had raised a federal question, and so the court could assert federal question jurisdiction over it. We don't contend that the court needs to, that we would need to win on this argument, but we do think that it exists because there were two different references, one about violating federal law and one about depriving her of federal benefits in the context of the complaint. Let's say, arguendo, that the allegations of the complaints do not contain causes of action that are based on federal law. What happens? What we would contend is that because they mentioned federal law. I understand that. I'm just saying, let's just say, go back to law school here. All of a sudden, there's just nothing in there, no reference to any federal at all. If just state law action is, what happens then? Well, then the court needs to consider whether there's diversity jurisdiction. Well, that's a little different issue. I'm talking about whether or not we have subject matter jurisdiction now. So if there's no federal subject matter jurisdiction, putting aside the diversity issue, what happens in this case? If there's no federal question jurisdiction or diversity jurisdiction, then the case gets remanded. Okay. And in this case, what federal laws do you say are the linchpin of the federal subject matter jurisdiction? Definitely the plaintiff did not allege a specific federal law. You agree that there is no federal law cause of action alleged? Right. I agree that it's an incredibly vague reference and not a specific federal law is asserted. We contend it's enough for federal question jurisdiction, but I definitely agree, Your Honor, that there's not a specific federal claim. Your Honor, I mentioned the first test already that for diversity jurisdiction, if the trustee is sued, its citizenship controls. This is stated explicitly in Navarro, and then interestingly both Americhold and Cardin note this about Navarro. Both of them say specifically Navarro had nothing to do with the citizenship of the trust since it was a suit by the trustees in their own names, distinguishing their cases. So I think it's important that the three pivotal Supreme Court cases at issue here all rely on the fact that in Navarro the trustee was suing. But again, this gets back to the question I asked of your opponent, which is are there any members? In other words, we know the trustee got served, but let's just say hypothetically that this were a real estate investment trust, which is a specific subject, of course, of one of the Supreme Court cases. If this were a real estate investment trust, then the Supreme Court tells us that we have to look at the residents of the beneficiaries of that trust, right? I would respectfully disagree with that. I think what Americhold tells us is if this is a business entity authorized to be its own entity under the state law, and if under that state law the entity can sue in its own name, then we have to consider the members of that entity. This case is really different because New York law governs the trust, which is one of the first things that we quoted from the PSA. It's governed by the New York common law. And under New York law, a trust can't sue in its own name. It has to sue. It has to have the lawsuit brought by the trustee. But didn't Americhold itself deal with the real estate investment trust? It deals with, yes, although this is a real estate mortgage. Didn't the court then say that the residents of the beneficiaries was important in determining jurisdiction? This trust is different, though. It's a real estate mortgage investment trust. I understand that, but I'm just saying if it were, then Americhold controls, right? If it were. If it were a real estate investment trust.  Okay. We disagree with that. Okay, all right. Because we think what hinged on Americhold was the fact that the trust brought the suit in its own name and that it was authorized to do so under state law. And this is something that actually Americhold talks about and distinguishes. One of the linchpins of Americhold is the fact that the fact that under Maryland law, the real estate investment trust at issue is treated as a separate legal entity that can be sued in its own name. And this was, Your Honor, the second point that I wanted to raise, the second test that this court could utilize for determining who citizenship controls is whether or not the state law that governs the trust allows suit in its own name. Any other questions by my colleagues? No. Okay. Thank you very much for your argument. So, counsel, you have a little time left here. I appreciate that, Your Honor. Counsel, did you file a motion for remand? No. So how long was this case being litigated in federal court? How long did it take from the time it was removed until summary judgment was granted? The case was removed on July 11, 2016, and, Your Honor, I can't remember when summary judgment was granted. But in any event, it was in federal court for some period of time. Right. And now you want us to find that that court did not have jurisdiction, send it back to state court, and give your client, in effect, another bite out of the apple. Let me confess, yes. Now, based on the fact that jurisdiction is an issue that can be raised at any time, you can see why I've got a little concern about this. Pardon? I've got concern about this. Oh, I understand that. It strikes me as a bit odd, too, but it is one of the strange lessons I learned in my first semester of law school. You say it can be raised at any time, and, I mean, it could be raised on a cert petition to the U.S. Supreme Court. Right. It's just one of the peculiarities of subject matter jurisdiction. But in this case, I gather from what you said to my colleague that the purpose of this action is simply to delay? No, the purpose of this action is to determine who has the right to enforce Ms. Demarest's loan. If I may respond to a couple of points made by appellee's counsel. First, in AmeriCorps, the trust was not the plaintiff. The trust was the defendant, and it was actually not a removal case. It was a case brought originally in the federal court somewhere in the 10th, I think in Kansas, as I recall. Second, AmeriCorps talked about REMIC trusts, real estate mortgage investment entities. These trusts, these securitized mortgage investment trusts, are organized under the same sections of the Internal Revenue Code, and basically the Internal Revenue Code creates a sort of passive flow through an investment device where the trust itself is not taxed on income. The certificate holders are taxed. So REMICs and securitized mortgage investment trusts are basically the same device under the Internal Revenue Code, and they're very much treated the same. Your time is up, counsel. One last point. All this discussion of the PSA is, to me, a bit off topic because removal is determined on the basis of what's in front of the district court when the removal petition is filed. The PSA was filed in connection with the motions for summary judgment much later. You don't determine removal jurisdiction based on what's produced at summary judgment. It's determined by what's alleged in the original complaint and the removal petition. Okay. Any other questions by my colleagues? Thanks to you both for your argument. The case just argued is submitted.
judges: Fernandez, M. Smith, Christensen